

# Fort Sill Apache Tribe Economic Development Code

**(Adopted June 21, 2008; Includes all Amendments through April 21, 2023; Business Committee Resolutions in Appendix)**

EXHIBIT 1

# TITLE 1
## FORT SILL APACHE ECONOMIC DEVELOPMENT CODE
## TABLE OF CONTENTS

CHAPTER ONE GENERAL; TITLE; FINDINGS; PURPOSE; ECONOMIC DEVELOPMENT AUTHORITY; DEFINITIONS ............................................................................................... 1
Section 101.  Title. ............................................................................................................ 1
Section 102.  Findings. ..................................................................................................... 1
Section 103.  Purpose. ...................................................................................................... 1
Section 104.  Definitions. ................................................................................................. 2
(A)  Authority. ........................................................................................................ 2
(B)  Board. ............................................................................................................... 2
(C)  Business Committee. ....................................................................................... 2
(D)  Code. ................................................................................................................ 2
"Code" means the Fort Sill Apache Economic Development Code, Title 1 of the FSAT Economic Development Act of 2008, as amended ................................................ 2
(E)  Coordinating Manager. ................................................................................... 2
"Coordinating Manager," "EDA Manager," or "Office Manager" all mean the primary administrative manager of the EDA. The Coordinating Manager's responsibilities are detailed in Section 223 of this Code. ............................................................................ 2
(F)  Demand Deposit. .............................................................................................. 2
"Demand Deposit" means an investment account that can be accessed at any time to withdraw any amount of funds without prior notice given to the bank. ...................... 2
(G)  Department Directors. .................................................................................... 2
"Department Directors" are the directors of the various EDA departments. ............... 2
(H)  EDA Assets. ..................................................................................................... 2
(I)  EDA LLC. ......................................................................................................... 3
(J)  Ex Officio. ......................................................................................................... 3
"Ex Officio" means a non-voting member of the EDA who holds the role as a result of his or her status or another position that he or she holds. ............................................ 3
(K)  For Cause. ........................................................................................................ 3
"For Cause" means, within the context of the removal of a Trustee of the EDA, that the Trustee has been removed for one of the following reasons: ........................................ 3
(L)  General Council. .............................................................................................. 3
(M)  "General Council" means the supreme governing body of FSAT as set forth in Article III of the Constitution and By Laws of the FSAT. ........................................... 3
(N)  Immediate Family. ........................................................................................... 3
(O)  Obligation. ....................................................................................................... 4
(P)  Personal Property. ........................................................................................... 4
(Q)  "Public Trust and Body Corporate" means an entity belonging to the whole Tribal people, with a distinct legal entity from its owners. ..................................................... 4
(R)  Real Property. .................................................................................................. 4
(S)  Term Deposit. ................................................................................................... 4
"Term Deposit" means an investment deposit made for a predetermined period, ranging from a few months to several years. ............................................................................ 4
(T)  Territorial Jurisdiction. ................................................................................... 4
(U)  Tribal Chairperson. ......................................................................................... 4

EXHIBIT 1

(V)  Trustee. ........................................................................................................... 4
Section 105.  Severability of Provisions. ................................................................. 5
Section 106.  Effective Date. .................................................................................... 5
Section 107.  Amendments. ....................................................................................... 5

CHAPTER TWO FORT SILL APACHE TRIBE OF OKLAHOMA ECONOMIC
DEVELOPMENT AUTHORITY ACT .................................................................................. 6
Section 201.  Establishment of Economic Development Authority. ......................... 6
(A)  Establishment. ..................................................................................... 6
(B)  Authorization. ...................................................................................... 6
Section 202.  Period of Existence; Dissolution. ....................................................... 6
(A)  Period of Existence. ............................................................................ 6
The EDA shall have perpetual existence and succession in its own name until dissolved. 6
(B)  Dissolution. .......................................................................................... 6
Upon dissolution of the EDA, after the EDA pays, satisfies and discharges or makes
adequate provision for the payment, satisfaction and discharge of all of its liabilities and
Obligations, the assets of the EDA shall be distributed to the Tribe. ................................. 6
Section 203.  Trustees; Number. ............................................................................... 6
Section 204.  Appointment of Trustees. .................................................................... 7
Section 205.  Qualification of Trustees. .................................................................... 7
(A)  Basic Qualifications. ........................................................................... 7
(B)  Private Business Operators. ................................................................ 8
(C)  Criminal History. ................................................................................ 8
(D)  Age. ..................................................................................................... 8
Section 206.  Term of Office. .................................................................................... 8
Section 207.  Vacancies. ............................................................................................ 8
Section 208.  Removal of Trustees. ........................................................................... 9
Section 209.  Compensation. ..................................................................................... 9
Section 210.  Officers. ............................................................................................... 9
(A)  Election. .............................................................................................. 9
(B)  Term. ................................................................................................... 9
(C)  Removal of Officers. ........................................................................... 9
(D)  Vacancies. ......................................................................................... 10
Section 211.  Duties of Officers. ............................................................................. 10
(A)  Duties of EDA Chairperson. ............................................................. 10
(B)  Duties of EDA Vice-Chairperson. .................................................... 10
(C)  Duties of Secretary/Treasurer. ......................................................... 10
Section 212.  EDA Committees. .............................................................................. 11
Section 213.  Meetings. ........................................................................................... 11
(A)  Regular Meetings. ............................................................................. 11
(B)  Special Meetings. .............................................................................. 11
(C)  Meeting Notices. ............................................................................... 11
(D)  Quorum; Virtual Meeting Participation. .......................................... 12
(E)  Voting. ............................................................................................... 12
Section 214.  Indemnification of Trustees. ............................................................. 12
Section 215.  Liability of Trustees. ......................................................................... 12
Section 216.  Acquisition of Interests by Trustees Prohibited. ............................... 13

EXHIBIT 1

(A)  Acquisition of Interest; Prohibition; Disclosures.................................. 13
(B)  Involuntary Acquisition of Interest; Prohibition................................... 13
(C)  Applicability. .................................................................................. 13
(D)  Violations....................................................................................... 13
Section 217.  Conflicts of Interest......................................................... 14
Section 218.  Powers and Responsibilities. ............................................ 14
Section 219.  EDA LLCs....................................................................... 16
Section 220.  Limited Waiver of Sovereign Immunity; Execution on Property; Power to Sue
and Be Sued. .......................................................................................... 17
(A)  Limited Waiver of Sovereign Immunity ........................................... 17
(B)  No Execution on EDA Property. ...................................................... 17
(C)  No Execution on Tribal Property ..................................................... 17
(D)  Power to Sue and Be Sued. ............................................................. 18
Section 221.  Property Interests of EDA................................................ 18
(A)  Personal Property. .......................................................................... 18
(B)  Real Property. ................................................................................ 18
(C)  Purchase of Land for Fee to Trust Acquisitions. .............................. 18
(D)  Assignments and Leases to EDA...................................................... 19
(E)  EDA Property as Public Property...................................................... 19
(F)  Lease and Sublease of EDA Interest in Real Property to Third Parties.................... 19
(G)  Conveyance, Assignment or Other Transfer as Evidence of EDA Existence. ......... 19
Section 222.  Operating Account; Economic Development Fund and Budget...................... 19
(A)  Operating Account. ......................................................................... 19
(B)  Economic Development Fund............................................................ 20
(C)  Budget Approval. ........................................................................... 20
The annual budget shall be approved by the EDA Board of Trustees for all businesses
managed by the EDA. ............................................................................. 20
Section 223.  Economic Development Authority Headquarters; Coordinating Manager. ..... 20
(A)  Location. ....................................................................................... 20
(B)  Coordinating Manager; Selection. .................................................... 20
(C)  Coordinating Manager Responsibilities............................................. 20
(D)  Personnel. ..................................................................................... 21
Section 224.  Reports. .......................................................................... 21
Section 225.  Records and Audit............................................................ 22
Section 226.  Insurance. ....................................................................... 22
The EDA shall, to the extent that the Board determines it to be economically reasonable,
maintain a policy of directors' and officers' liability insurance, on such terms and conditions
as may be approved by the Board. ........................................................... 22
The EDA may also, to the extent that the Board determines it to be economically reasonable,
purchase insurance coverage for Trustee and Officer errors and omissions, fiduciary liability,
and other coverages, on such terms as may be approved by the Board.................... 22

CHAPTER THREE ISSUANCE OF OBLIGATIONS ................................ 23
Section 301.  EDA to Issue Obligations. ................................................ 23
Section 302.  No Personal Liability on Obligations. ................................ 23
Section 303.  No Tribal Liability on Obligations. ................................... 23
Section 304.  Manner of Issuance and Sales........................................... 23

EXHIBIT 1

Section 305.  Obligations Are Negotiable. ............................................................ 24
Section 306.  Security for Obligations. ................................................................. 24
Section 307.  Actions to Be Filed For Record. ...................................................... 26

EXHIBIT 1

# CHAPTER ONE
## GENERAL; TITLE; FINDINGS; PURPOSE;
## ECONOMIC DEVELOPMENT AUTHORITY; DEFINITIONS

Section 101. Title.

This Title shall be known and cited as the Fort Sill Apache Economic Development Code, Title 1 of the Fort Sill Apache Tribe Economic Development Act of 2008.

[HISTORY: Ratified by the General Council on June 21, 2008;
Amended by Resolution FSABC-2023-07, April 21, 2023.]

Section 102. Findings.

It is hereby declared and found that:

(A)    There exists a critical need for coordination and professional oversight of the economic and industrial activities within the jurisdiction of the Fort Sill Apache Tribe ("FSAT" or "Tribe") to preserve and develop the Tribe's resources and to provide economic and employment opportunities for Tribal members; and

(B)    The establishment of an economic development structure for FSAT serves an essential governmental function of FSAT by allowing the Tribe to direct its economic and industrial activities to address the aforementioned needs; and

(C)    The establishment of an economic development structure for FSAT addresses needs which have not been addressed through existing Tribal organizations, and that the development of Tribal revenue generating activities are public uses and purposes, for which public money may be spent and private property acquired, and are governmental functions of Tribal concern.

[HISTORY: Ratified by the General Council on June 21, 2008.]

Section 103. Purpose.

FSAT Economic Development Code is hereby enacted:

To establish, own, and operate financially self-sustaining and successful business enterprises within the jurisdiction of the Tribe;

To promote economic development for the FSAT by creating, developing, or enhancing employment and business opportunities for members of the Tribe;

To attract outside funding in support of economic development of the Tribe, by securing grants, loans, equity capital, and bond funding from sources outside the Tribe;

To expand FSAT's resource base and economic development potential through suitable investments in land, financial instruments and enterprises; and

To provide revenues with which FSAT may address other pressing matters of public health,

EXHIBIT 1

safety, and welfare.

[HISTORY: Ratified by the General Council on June 21, 2008;
Amended by Resolution FSABC-2023-07, April 21, 2023.]

Section 104. Definitions.

The following terms wherever used or referred to in this law, shall have the following respective meanings, unless a different meaning clearly appears from the context:

(A)     Authority.

"Authority" or "EDA" means the FSAT Economic Development Authority acting through its Board of Trustees or EDA Board.

(B)     Board.

"Board" means the FSAT Economic Development Authority Board of Trustees.

(C)     Business Committee.

"Business Committee" means the Tribal Business Committee established pursuant to Article IV of the Constitution of FSAT.

(D)     Code.

"Code" means the Fort Sill Apache Economic Development Code, Title 1 of the FSAT Economic Development Act of 2008, as amended

(E)     Coordinating Manager.

"Coordinating Manager," "EDA Manager," or "Office Manager" all mean the primary administrative manager of the EDA. The Coordinating Manager's responsibilities are detailed in Section 223 of this Code.

(F)     Demand Deposit.

"Demand Deposit" means an investment account that can be accessed at any time to withdraw any amount of funds without prior notice given to the bank.

(G)     Department Directors.

"Department Directors" are the directors of the various EDA departments.

(H)     EDA Assets.

"EDA Assets" means all personal and real property; all assignments, leases, and leasehold estates in real property; good will; or any other thing(s) of value that have been

EXHIBIT 1

placed under the control of the Authority either from the Tribe or other entities, or which has been received by EDA from debt Obligations or earnings independent of the Tribe.

(I)     EDA LLC.

"EDA LLC" means a limited liability company which is established by the EDA in which the EDA or a subsidiary of the EDA is the owner of 100% of the limited liability company.

(J)     Ex Officio.

"Ex Officio" means a non-voting member of the EDA who holds the role as a result of his or her status or another position that he or she holds.

(K)     For Cause.

"For Cause" means, within the context of the removal of a Trustee of the EDA, that the Trustee has been removed for one of the following reasons:

(1)     Incompetence, neglect of duty, or misconduct in office.

(2)     Failure to substantially perform duties.

(3)     The commission of an act of fraud (as further described in the FSAT Anti-Fraud Policy), embezzlement, theft or proven dishonesty, or any other illegal act or practice (whether or not resulting in criminal prosecution or conviction), including theft or destruction of property of the Tribe, the EDA, an EDA LLC, or an EDA Asset.

(4)     The willful engaging in misconduct which is deemed by the Business Committee, in good faith, to be materially injurious to the Tribe, the EDA, an EDA LLC, or an EDA Asset, monetarily or otherwise.

(5)     The continued failure or habitual neglect by the Trustee to perform his or her duties.

Other disregard of the Tribe's laws, codes, or other rules or policies or conduct evidencing willful or wanton disregard of the interests of the Tribe or the EDA.

(L)     General Council.

"General Council" means the supreme governing body of FSAT as set forth in Article III of the Constitution and By Laws of the FSAT.

(M)     Immediate Family.

"Immediate Family" means spouse, son, daughter, son-in-law, daughter-in-law, mother, father, sister, brother, grandparent, grandchild, stepchild, uncle, aunt, niece, nephew, or first cousin

Title 1 – Page 3

EXHIBIT 1

(N)   Obligation.

"Obligation" means any notes, bonds, interim certificates, debentures, or other forms of debt issued by the EDA pursuant to this law.

(O)   Personal Property.

"Personal Property" means any property which is the subject of ownership not coming under the denomination of real property.

(P)   "Public Trust and Body Corporate" means an entity belonging to the whole Tribal people, with a distinct legal entity from its owners.

(Q)   Real Property.

"Real Property" means land and generally whatever is erected or growing upon or affixed to land, including but not limited to the surface of the land, structures and plants on the surface of the land, minerals rights to the land and water rights, unless specifically excluded.

(R)   Term Deposit

"Term Deposit" means an investment deposit made for a predetermined period, ranging from a few months to several years.

(S)   Territorial Jurisdiction.

"Territorial Jurisdiction" means all "Indian country" lands as defined by federal law located within the geographical boundaries of the FSAT as they existed in the Act of August 10, 1946 (60 Stat. 976) and the Oklahoma Indian Welfare Act of June 26, 1936 (49 Stat. 1967) entered into by FSAT and the United States of America, including but not limited to the following property located within said boundaries: property held in trust by the United States of America on behalf of FSAT; property owned in fee by FSAT; restricted and trust allotments; dependent Indian communities; aboriginal land claims; and water rights.

(T)   Tribal Chairperson.

"Tribal Chairperson" means the Chairperson of FSAT.

(U)   Trustee.

"Trustee" means one of the voting Trustees of the Economic Development Authority, including the non-voting Ex Officio Member.

[HISTORY: Ratified by the General Council on June 21, 2008;

Title 1 – Page 4

EXHIBIT 1

Amended by Resolution FSABC-2011-04, April 7, 2011;
Amended by Resolution FSABC-2013-01, January 3, 2013;
Amended by Resolution FSABC-2016-21, October 5, 2016;
Amended by Resolution FSABC-2023-07, April 21, 2023.]

Section 105.  Severability of Provisions.

If any provision of this law or the application thereof to any persons or circumstances shall be adjudged by any court of competent jurisdiction to be invalid, such judgment shall not affect, impair, or invalidate the remainder of this law or its application to other persons and circumstances, but shall be confined in its operation to the provisions of this Code or the application thereof to the persons and circumstances directly involved in the controversy in which such judgment shall have been rendered.

[HISTORY: Ratified by the General Council on June 21, 2008.]

Section 106.  Effective Date.

This Code takes effect immediately upon approval by the General Council.

[HISTORY: Ratified by the General Council on June 21, 2008.]

Section 107.  Amendments.

Amendments to this Code may be proposed by the EDA in writing presented at any regular or special meeting of the Business Committee or proposed by any Business Committee member and shall be approved and ratified by a written resolution duly adopted by the Business Committee through an unanimous vote by all members of the Business Committee or by a majority vote of eligible voters by a referendum vote of the General Council.

[HISTORY: Ratified by the General Council on June 21, 2008;
Amended by Resolution FSABC-2023-07, April 21, 2023.]

EXHIBIT 1

## CHAPTER TWO
## FORT SILL APACHE TRIBE OF OKLAHOMA
## ECONOMIC DEVELOPMENT AUTHORITY ACT

Section 201.  Establishment of Economic Development Authority.

    (A)    Establishment.

        Pursuant to the authority vested in the General Council by Article IV of the Constitution of FSAT to act for the Tribe in all matters, there is hereby established and created a Public Trust and Body Corporate to issue Obligations and provide funds for the furtherance and accomplishment of any authorized and proper public function or purpose of the Tribe. This Public Trust and Body Corporate shall be known as the "Economic Development Authority," "Authority," or "EDA" and shall be an agency and instrumentality of the Tribe having the purposes, powers, and duties as herein or hereafter provided by law of the Tribe.

    (B)    Authorization.

        In any suit, action, or proceeding involving the validity or enforcement of, or relating to, any of its contracts; the EDA shall be conclusively deemed to have become established and authorized to transact business and exercise its powers upon proof of the adoption of this law.

       [HISTORY: Ratified by the General Council on June 21, 2008;
       Amended by Resolution FSABC-2023-07, April 21, 2023.]

Section 202.  Period of Existence; Dissolution.

    (A)    Period of Existence.

        The EDA shall have perpetual existence and succession in its own name until dissolved.

    (B)    Dissolution.

        Upon dissolution of the EDA, after the EDA pays, satisfies and discharges or makes adequate provision for the payment, satisfaction and discharge of all of its liabilities and Obligations, the assets of the EDA shall be distributed to the Tribe.

       [HISTORY: Ratified by the General Council on June 21, 2008;
       Amended by Resolution FSABC-2011-04, April 7, 2011;
       Amended by Resolution FSABC-2023-07, April 21, 2023.]

Section 203.  Trustees; Number.

The Authority shall be comprised of five (5) Trustees responsible for its management. A quorum of three (3) Trustees shall be required for any official action of the EDA. The Tribal Chairperson

EXHIBIT 1

shall serve as an Ex Officio member of the Board of Trustees, without voting rights and may not be an officer of the EDA. An Ex Officio member does not count toward a quorum.

[HISTORY: Ratified by the General Council on June 21, 2008;
Amended by Resolution FSABC-2023-07, April 21, 2023.]

Section 204.  Appointment of Trustees.

(A)    The Tribal Chairperson shall be responsible for appointment of the Members of the Board of Trustees of the EDA in accordance with the requirements of Section 205 of this Code. After consultation with the EDA Board of Trustees, the Tribal Chairperson shall place the confirmation of the appointment of the selection of Trustees on the agenda of the next regular or special meeting of the Business Committee. A resolution of the Business Committee signed by the Tribal Chairperson and attested by the Business Committee's Secretary as to the appointment or reappointment of any Trustee shall be conclusive evidence of the due and proper appointment of the Trustee. An outgoing Trustee may holdover until such time as the next Trustee is approved.

(B)    The EDA Board shall be comprised of up to three (3) Tribal members, provided that no member of the Business Committee may be appointed Trustee of the EDA, the remaining two (2) or more members of the Board of Trustees shall be non-tribal members.

(C)    No attorney currently serving in any capacity as legal counsel for the FSAT shall be appointed to the EDA Board of Trustees.

(D)    Other than selection of Trustees, the Business Committee shall not engage in the management of the EDA.

[HISTORY: Ratified by the General Council on June 21, 2008;
Amended by Resolution FSABC-2023-07, April 212, 2023.]

Section 205.  Qualification of Trustees.

(A)     Basic Qualifications.

Trustees shall:

(1)    possess at least a bachelor's degree in business management, accounting, banking, finance, or law; or

(2)    have a minimum of five (5) years of work experience in one or more of the following areas: business management, gaming, accounting, banking, finance, or law; or

(3)    be among the Tribe's most qualified individuals not meeting the requirements listed previously.

In addition, potential Trustees, including any Ex Officio Members shall also possess:

EXHIBIT 1

(4)    the ability to pass a background check; and

(5)    the ability to obtain a FSAT Gaming License.

It is desired that each of the Trustees selected shall serve a designated advisory role on the Board, with at least one Trustee having a background in finance and accounting, one having a background in regulatory matters, one having a background in government contracting, or other such roles as may be implemented by the Board.

(B)    Private Business Operators.

No Trustee shall be barred from serving as a Trustee because they operate a private business within the Territorial Jurisdiction of the EDA.

(C)    Criminal History.

No person who has been convicted in a court of competent jurisdiction of any felony or convicted of a misdemeanor involving embezzlement, fraud, or moral turpitude shall serve as a Trustee of the EDA.

(D)    Age.

Each Trustee shall be at least twenty-five (25) years of age and legally capable of entering into a binding contract.

[HISTORY: Ratified by the General Council on June 21, 2008; Amended by Resolution FSABC-2023-07, April 21, 2023.]

Section 206.  Term of Office.

The terms of office for Trustees first serving after the effective date of this section shall be assigned in a manner to establish staggered terms. Thereafter, the term of office shall be for five (5) years, or in the event of a vacancy, for the balance of the term becoming vacant. An outgoing Trustee may holdover until such time as the next Trustee is approved. A Trustee may be reappointed to serve successive terms, subject to the criteria as set forth in Section 204 of this Code.

[HISTORY: Ratified by the General Council on June 21, 2008; Amended by Resolution FSABC-2023-07, April 21, 2023.]

Section 207.  Vacancies.

Any vacancy in the office of Trustee caused by death, resignation, disqualification, removal or other cause, shall be filled by the appointment of a new Trustee by the Tribal Chairperson, with the confirmation of the Business Committee as set forth in Section 204 of this Code.

[HISTORY: Ratified by the General Council on June 21, 2008; Amended by Resolution FSABC-2023-07, April 21, 2023.]

EXHIBIT 1

Section 208.  Removal of Trustees.

A Trustee may be removed by the Tribal Chairperson with approval by the Business Committee For Cause, after a hearing by the Business Committee, provided that the Trustee must have received written notice setting hearing date and specifying the charges against the Trustee at least ten (10) days prior to the hearing.  At any such hearing, the Trustee shall have the opportunity to be heard in person, be represented by counsel, or present witnesses in his or her behalf.

Neither an appointment nor a removal of a Trustee of the EDA shall be of any force or effect until a written resolution of the Business Committee reflecting the confirmation or the removal has been filed for record in the office of the Secretary of the Business Committee.

[HISTORY: Ratified by the General Council on June 21, 2008;
Amended by Resolution FSABC-2023-07, April 21, 2023.]

Section 209.  Compensation.

All Trustees, with the exception of the Ex Officio Member, may receive reimbursement for expenses, including traveling expenses, when incurred in the discharge of their duties, pursuant to policy and procedures. Expenses may be advanced with the approval of the Board of Trustees. All, with the exception of the Ex Officio Member, shall receive reasonable compensation for their services at rates to be established by the Board of Trustees.

[HISTORY: Ratified by the General Council on June 21, 2008;
Amended by Resolution FSABC-2011-04, April 7, 2011;
Amended by Resolution FSABC-2023-07, April 21, 2023.]

Section 210.  Officers.

(A)    Election.

The Authority shall elect from among its voting members an EDA Chairperson, an EDA Vice-Chairperson, and a Secretary/Treasurer of the Authority, who shall preside at meetings of the Authority in that order. All EDA officers shall be voting Trustees of the Authority.

(B)    Term.

The officers shall serve for a one (1) year term ending one year from the date of appointment, provided that each officer shall hold office until his or her successor is elected, even though such officer's tenure of office may thereby exceed one (1) year.  A Trustee may serve a successive term in an office if so elected.

(C)    Removal of Officers.

Any officer of the Authority may be removed For Cause or without cause by the affirmative vote of a majority of all Trustees then in office whenever, in the judgment of said Trustees, the best interests of the EDA would be served thereby; provided that such

Title 1 – Page 9

EXHIBIT 1

removal shall not affect the validity of any contract previously executed. Removal of an officer from office shall not be deemed to be a removal from the Board of Trustees of the EDA.

(D)    Vacancies.

A vacancy in any office because of death, resignation, removal, disqualification or otherwise, may be filled for the remaining term of such office by election by the remaining Trustees.

[HISTORY: Ratified by the General Council on June 21, 2008; Amended by Resolution FSABC-2023-07, April 21, 2023.]

Section 211. Duties of Officers.

(A)    Duties of EDA Chairperson.

The Chairperson of the EDA shall preside at all meetings of the Authority and shall generally be responsible for the efficient and orderly functioning of the Authority. The Chairperson may also sign, on behalf of the EDA  and in conjunction with the Secretary/Treasurer or any other proper officer of the EDA authorized by the Authority or by law to so sign, any deeds, mortgages, bonds, contracts or other instruments which the Authority has authorized to be executed; provided, however, the foregoing shall not apply to instances in which the signing and execution thereof shall be expressly delegated by the Authority to some other officer or agent of the EDA, or shall be required by law to be otherwise signed or executed. The Chairperson shall perform all duties incident to the office of Chairperson and such other duties as may be prescribed by the Authority from time to time. The Chairperson shall be an Ex Officio Member of all standing or temporary committees and shall be responsible for carrying to effect all orders and resolutions of the Authority as required or directed or as good business judgment dictates.

(B)    Duties of EDA Vice-Chairperson.

The Vice-Chairperson of the Authority shall assume the duties of the Chairperson in the Chairperson's absence, or upon his or her request or upon the Chairperson's neglect, failure, or refusal to undertake the duties required of or delegated to the Chairperson by law.

(C)    Duties of Secretary/Treasurer.

The Secretary/Treasurer of the EDA shall attend all Authority meetings and shall cause to be kept complete and accurate records of all meetings and actions taken by the Authority. The Secretary/Treasurer shall give or cause to be given all notices required by law. The Secretary/Treasurer shall cause to be kept full and accurate financial records, make periodic reports to the Board of Trustees, and submit reports to the Business Committee as requested.

[HISTORY: Ratified by the General Council on June 21, 2008;

EXHIBIT 1

Amended by Resolution FSABC-2023-07, April 21, 2023.]

Section 212.  EDA Committees.

Standing or temporary committees may be appointed from the EDA Trustees' own number from time to time by resolution passed by a majority of the Trustees.  The resolution establishing a committee shall define the committee duties, which may include investigations, planning and recommendations regarding general EDA operations or regarding specific issues. No EDA committee shall have authority to take final action on any matter without approval of a majority vote of the Board of Trustees.

All committees so appointed shall consist of two (2) Trustees and other appointees as needed and shall keep regular minutes of their meetings and shall cause them to be recorded in books kept for that purpose in the office of the EDA and shall report the same to the Authority at its next regular meeting.  All committees appointed as specified herein may hold meetings whether within or without the Territorial Jurisdiction of the Tribe.

[HISTORY: Ratified by the General Council on June 21, 2008;
Amended by Resolution FSABC-2023-07, April 21, 2023.]

Section 213.  Meetings.

(A)     Regular Meetings.

The Authority shall attempt to hold regular meetings each month.

(B)     Special Meetings.

Special meetings may be called at any time by the Chairperson of the EDA, or in his or her absence, by the Vice-Chairperson, or by written request of at least three (3) of the Trustees.  The person or persons calling the special meeting shall notify the Coordinating Manager, or in the absence of a Coordinating Manager, the Secretary/Treasurer of the Authority, of the date, time and place for holding the meeting at least three (3) days before the meeting.

(C)     Meeting Notices.

(1)     Manner of Notice:: The EDA Coordinating Manager, or if one has not been appointed the Secretary/Treasurer, shall be responsible for sending notice setting forth the meeting date, meeting place and business to be conducted to Trustees, including the Tribal Chairperson, at least three (3) days before the meeting. The meeting notice shall be delivered to each Trustee using his or her address or contact information as it appears in the EDA records either, personally, by mail, by electronic mail, or by facsimile transmission.

(2)     Date of Delivery of Notice.  A personal delivery shall be deemed delivered upon receipt by the Trustee.  A notice which is mailed shall be deemed to be delivered when deposited with the United States Postal Service properly addressed to the Trustee,

EXHIBIT 1

with postage prepaid thereon. If notice be given by electronic mail or facsimile transmission, such notice shall be deemed to be delivered upon completion of transmission to the Trustee.

(3)    Waiver of Notice.  A waiver of the notice requirements set forth herein acknowledged by the Trustees entitled to such notice, whether before or after the time stated therein, shall be deemed equivalent to the giving and receiving of such notice.

(4)    Notice Requirements for Valid Emergency Meeting.  A special emergency meeting may be held without full compliance with the notice requirements set forth herein and without written waivers of notice if all Trustees have actual notice of the meeting, a quorum is present, whether in person, or virtually and the Trustees present vote that an emergency meeting is necessary. The minutes of any emergency meeting shall state the purpose of the meeting.

(D)    Quorum; Virtual Meeting Participation.

Three (3) voting Trustees shall constitute a quorum.  Any validly called meeting may be held via teleconference or virtually to establish a quorum.

(E)    Voting.

Approval of a motion or resolution shall require a simple majority of the voting Trustees at a meeting at which a quorum is present.

[HISTORY: Ratified by the General Council on June 21, 2008; Amended by Resolution FSABC-2023-07, April 21, 2023.]

## Section 214.  Indemnification of Trustees.

The Tribe and the EDA shall indemnify every Trustee and the person's heirs, executors and administrators against judgments resulting from and the expenses reasonably incurred by such Trustee in connection with any action to which he or she may be made a party by reason of being a Trustee, including any action based upon any alleged act or omission on his or her part as an EDA Trustee, except in relation to matters as to which such Trustee shall be finally adjudged in such action to be liable for negligence or misconduct, and except that, in the event of a settlement out of court, indemnification shall be provided only in connection with such matters covered by the settlement as to which the EDA is advised by its counsel that the person to be indemnified was not liable for such negligence or misconduct.  The foregoing rights of indemnification shall not be exclusive of other rights to which such Trustees may be entitled.

[HISTORY: Ratified by the General Council on June 21, 2008.]

## Section 215.  Liability of Trustees.

A Trustee shall be personally liable for monetary damages for breach of fiduciary duty in the following circumstances:  for breach of the Trustee's duty of loyalty to the EDA or to the beneficiary, the Tribe; for any acts or omissions by the Trustee not in good faith or which involve

Title 1 – Page 12

EXHIBIT 1

intentional misconduct or a knowing violation of law; or for any transaction from which the Trustee derived an improper personal benefit.

[HISTORY: Ratified by the General Council on June 21, 2008.]

Section 216.  Acquisition of Interests by Trustees Prohibited.

(A)    Acquisition of Interest; Prohibition; Disclosures.

During the applicable tenure and for one (1) year thereafter, a Trustee of the EDA, an elected official of the Tribe, the General Council Members, and the Business Committee Members shall not voluntarily acquire any interest, direct or indirect, in any matter or in any property included or planned to be included in a Tribal or EDA transaction, unless, prior to such acquisition, he or she discloses such interest in writing to the EDA and such disclosure is entered upon the minutes of the EDA. In addition, the Trustee, elected official, General Council Members, or Business Committee Members shall not participate in any action by the EDA or in any action by the Business Committee relating to the matter property in which he or she has an interest.

(B)    Involuntary Acquisition of Interest; Prohibition.

If a Trustee, an elected official of the Tribe, General Council Member, or Business Committee Member either involuntarily acquires any such interest, or voluntarily or involuntarily acquired any such interest prior to appointment or employment, then that the person shall not participate in any action by the EDA or in any action by the Business Committee relating to the property or contract in which the individual has any such interest.

(C)    Applicability.

A Trustee, an elected official of the Tribe, a General Council Member, or a Business Committee Member shall not be precluded from purchasing or holding any Obligation of the EDA, nor shall it be considered a violation herein if the Trustee's employer transacts business with the EDA either as a banking institution or corporate trustee, or if such employer's rates or charges are established by a government agency.

(D)    Violations.

Any violation of the foregoing provisions of this Section shall constitute misconduct in office and a violation of the public trust and shall subject the party to removal and to any applicable criminal sanctions set forth in the laws of the Tribe, and make such party liable to the EDA for any and all profits of any kind or character which may have been obtained by virtue of the violation of his or her trust.

[HISTORY: Ratified by the General Council on June 21, 2008;
Amended by Resolution FSABC-2023-07, April 21, 2023.]

EXHIBIT 1

Section 217.  Conflicts of Interest.

(A)    Conflicts of Interests are discussed more particularly in the FSAT Conflicts of Interest Policy ("Conflicts of Interest Policy"), the terms of which are incorporated herein by reference.

(A)    A conflict of interest shall be deemed to exist when a Trustee, or any for-profit firm or legal entity in which such Trustee or member of his or her Immediate Family is an officer, partner or principal stockholder, knowingly receives any compensation in exchange for furnishing any real property to or for the use of the EDA.

(B)    A conflict of interest shall be deemed to exist when a Trustee or member of his or her Immediate Family: (i) is an officer, partner or principal stockholder; and (ii)knowingly receives any consideration beyond his or her approved compensation and benefits in exchange for furnishing any services or information to or for the use of the EDA, except as provided in Section 217(c) herein.

(C)    A conflict of interest shall be deemed to exist in any contractual relationship in which a Trustee or member of his or her Immediate Family: (i) is an officer, partner or principal stockholder; and (ii) shall directly or indirectly buy or sell goods or services to or otherwise contract with EDA, unless the Trustee fully and publicly disclosed all such interest or interests and the contractual relationship was secured by competitive sealed bidding following a public invitation for sealed bidding.

(D)    Upon a showing of a conflict of interest pursuant to the Conflict of Interest Policy, such Trustee shall be subject to removal and to any applicable disciplinary and corrective action and such contract shall be deemed unenforceable as against such trust.

[HISTORY: Ratified by the General Council on June 21, 2008;
Amended by Resolution FSABC-2023-07, April 21, 2023.]

Section 218.  Powers and Responsibilities.

Powers and Responsibilities.

The EDA shall have the following powers and responsibilities which it may exercise consistent with the purposes for which it is established:

(A)    Make and administer Policies and Procedures as the EDA may deem necessary and desirable for the government of its internal affairs, to enforce this Code, and to effectuate the powers and responsibilities granted by this Code;

(B)    Maintain and administer the Tribe's Economic Development Fund established pursuant to Section 222 herein;

(C)    Invest such funds subject to the control of the EDA as are not required for immediate disbursements, provided that the EDA shall exercise the judgment and care in the circumstances then prevailing, which persons of prudence, discretion and intelligence

EXHIBIT 1

exercise in the management of their own affairs, not in regard to speculation but in regard to the permanent disposition of their funds, considering the probable income as well as the probable safety of their capital and in keeping with the Conflict of Interest Policy;

(D)    Establish and maintain such bank accounts as may be necessary or convenient, including checking and savings accounts, savings certificates, certificates of deposit, and any other short term minimal risk deposit ;

(E)    Employ a Coordinating Manager and establish the conditions of the employment of both pursuant to job descriptions consistent with the duties as set forth herein; and

(F)    Employ Department Directors and other managers, directors, officers, and legal counsel, including establishing the conditions of counsel's employment;

(G)    Sue in any Court in its own name, as expressed by Resolution of the Board;

(H)    Use the name "Economic Development Authority," "Authority," or "EDA" in any of its business activities within or without the Territorial Jurisdiction provided that said name is hereby reserved to the use of the EDA and no other domestic or foreign company may use such name, except as otherwise provided in this Code;

(I)    Acquire lands, including by use of eminent domain, provided that exercise of this power shall be limited to the furtherance of public purpose projects involving revenue-producing utility projects of which the public trust retains ownership

(J)    Acquire land by use of other means, as set forth in section 221 of this Code;

(K)    Engage in any lawful business and take such further actions, not inconsistent with this Code, as are commonly engaged in by Public Trust and Body Corporate entities of this character as the EDA may deem necessary or convenient to effectuate the purposes of the EDA, and to exercise any of the powers of a business EDA LLC as defined in Section 219 herein; and

(L)    Do any and all things necessary or desirable and not prohibited to secure the financial aid or cooperation of the Federal government or private sources of capital in the undertaking, construction, maintenance, or operation of any project of the EDA, subject to the limitations contained in this Code.

(M)    Aid and assist private sector businesses in locating and operating within the Territorial Jurisdiction, including assistance in achieving compliance with appropriate FSAT laws and regulations;

(N)    Enter into agreements, contracts, partnerships, joint ventures and other business arrangements and undertakings with any governmental agency, federal, state or local (including any Tribe) or with any person, partnership, corporation or other legal entity to effectuate the purposes of the EDA;

Title 1 -- Page 15

EXHIBIT 1

(O)    Execute as an agency of the Tribe applications for receipt and administration of federal grants and contracts which fund types of activities in which EDA may engage, while working with the Tribe pursuant to its Grant Policy to coordinate required Resolutions of the EDA and the Business Committee;

(P)    Establish separate EDA LLCs under Tribal Law pursuant to Section 219 herein;

(Q)    Except as otherwise provided by law, Tribal resolution, or joint resolution of the Business Committee and Board, apply its net profits in its discretion in furtherance of the EDA's purposes; provided, however, that "Net Distributable Funds" as defined in the Tribe's federally approved Revenue Allocation Plan, as amended, the terms of which are incorporated herein by reference, shall be applied.

(R)    Lease property from or to the Tribe and others for such periods as are authorized by law, and to hold and manage or sublease the same as provided for in Section 221 of this Code;

(S)    Borrow or lend money, to issue temporary or long-term evidence of indebtedness, and to repay the same. Obligations shall be issued and repaid in accordance with Chapter 3 herein;

(T)    Pledge EDA assets as defined in Section 104 herein as security for debts; and to acquire, sell, lease, exchange, transfer or assign EDA personal property or interests therein;

(U)    Own personal property and acquire real property pursuant to Section 221 herein;

(V)    Undertake and carry out studies and analyses of employment and job training needs within the territorial jurisdiction of the Tribe; and

(W)    To manage all tribal business entities, including those established as EDA LLCs under Section 219 of this Code, which transact business for profit or not-for-profit.

[HISTORY: Ratified by the General Council on June 21, 2008;
Amended by Resolution FSABC-2011-04, April 7, 2011;
Amended by Resolution FSABC-2011-06, June 16, 2011;
Amended by Resolution FSABC-2013-01, January 3, 2013;
Amended by Resolution FSABC-2016-21, October 5, 2016;
Amended by Resolution FSABC-2023-07, April 21, 2023.]

Section 219.  EDA LLCs.

If the EDA establishes a limited liability company, as authorized by this Section 219, the EDA shall serve as sole unitholder for the duration of the limited liability company's existence and may appoint one or more managers of each such limited liability company. The EDA may

EXHIBIT 1

provide funding and may assign the use of personal and real property subject to its control to such limited liability company. The EDA may remove the manager(s) for any reason by a majority vote of the EDA Board of Trustees. Upon majority vote of the EDA Board of Trustees acting as sole unitholder of an EDA LLC, the EDA LLC may exercise the powers of the EDA designated in Section 218, Paragraphs (D), (F), (G), (L), (M), (N) (R), and (S).

[HISTORY: Ratified by the General Council on June 21, 2008;Amended by Resolution FSABC-2013-01, January 3, 2013; Amended by Resolution FSABC-2023-07, April 21, 2023.]

Section 220. Limited Waiver of Sovereign Immunity; Execution on Property; Power to Sue and Be Sued.

(A)    Limited Waiver of Sovereign Immunity

(1)    No provision of this Title shall be construed to be a waiver or partial waiver of the Tribe's sovereign immunity.

(2)    No provision of this Code shall be construed to be a waiver or partial waiver of the EDA's sovereign immunity without the consent of the Board of Trustees of the EDA. The right and protection of sovereign immunity enjoyed by the EDA may be waived by the EDA Board of Trustees for particular transactions, or for all purposes and shall be memorialized in a written resolution describing the nature and extent of the waiver and such resolution shall be executed by the Board of Trustees of the EDA.

(3)    No provision of this Code shall be construed to be a waiver or partial waiver of any EDA LLC's sovereign immunity without the consent of the Board of Trustees of the EDA. The right and protection of sovereign immunity enjoyed by an EDA LLC may be waived by the EDA Board of Trustees for particular transactions, or for all purposes, and shall be memorialized in a written resolution describing the nature and extent of the waiver, and such resolution shall be executed by the Board of Trustees of the EDA.

(B)    No Execution on EDA Property.

Subject to the provisions of Section 220 (A) of this Code, all property including funds acquired or held by the EDA pursuant to this law shall be exempt from levy and sale by virtue of an execution, and no execution nor other judicial process shall issue against the same, nor shall any judgment against the EDA be deemed to be a charge or lien upon such property. However, the provisions of this Section shall not apply to or limit the right of obligees to pursue any remedies for the enforcement of any pledge or lien given by the EDA on its rents, fees, or revenues, or to enforce any purchase money mortgage upon such lands purchased by the EDA with the proceeds of the note secured by such purchase money mortgage, provided that such enforcement is in compliance with requirements of Section 220 (A) herein.

(C)    No Execution on Tribal Property

(1)    No property belonging to the Tribe shall be pledged as security for any debt

EXHIBIT 1

incurred by the EDA or any EDA LLC.

(2)    Neither the Tribe nor any of its property shall be liable or attached for any of the debts, liabilities, or Obligations of the Authority, nor may any Court make or enforce any order concerning execution upon or right to possession of any tribally owned property assigned to the use of the Authority unless the General Council gives its written consent to such order expressed by tribal resolution.

(D)    <u>Power to Sue and Be Sued.</u>

(1)    The EDA shall have the power to sue in any Court in its own name, and with the written consent of the Business Committee expressed by a resolution, to sue on behalf of the Tribe by styling the case as "the FSAT ex rel. Economic Development Authority."

(2)    No property of the Authority may be taken by attachment, Court order, lien or otherwise to satisfy any judgment rendered in such a case absent the consent of the Board of Trustees expressed by an EDA resolution as provided in Section 220 (A) above.

[HISTORY: Ratified by the General Council on June 21, 2008; Amended by Resolution FSABC-2023-07, April 21, 2023.]

Section 221. <u>Property Interests of EDA.</u>

(A)    <u>Personal Property.</u>

Any personal property may be acquired and held in the name of the EDA.

(B)    <u>Real Property.</u>

Any estate in real property may be acquired and held in the name of the EDA. The EDA may sell, convey, divest, or otherwise transfer any real property held in its name provided such transfer is in keeping with the provisions and purpose of this Code. The EDA may acquire lands by any means, whether for the EDA or the Tribe, utilizing eminent domain, easements, or other means.

(C)    <u>Purchase of Land for Fee to Trust Acquisitions.</u>

The EDA may purchase or acquire by gift any land or interest in land in the name of the Tribe, provided, that such land shall, as desired by FSAT, be conveyed to the Tribe and placed in trust upon the approval of the Business Committee and General Council of the Tribe and the Secretary of the Interior for the benefit of the Tribe, and provided further that said land or interest in land may then be returned to the control of the EDA by written assignment or lease approved by duly enacted resolution of the Business Committee of the Tribe. EDA and FSAT shall work together to coordinate these efforts, and keep each other informed for the benefit of the Tribe.

EXHIBIT 1

(D)    Assignments and Leases to EDA.

The EDA shall not have the power to force an assignment or lease of any property. The EDA may obtain in its name by voluntary assignment or lease an interest in real property owned by a third party, owned by the Tribe or held in trust by the United States for the Tribe. All assignments and leases shall state the term of the assignment or lease. Any lease or assignment of Tribal land to EDA for an indefinite term or for no stated term shall be an assignment which is revocable upon thirty (30) days' notice by the Business Committee that the land is needed for other Tribal purposes. The determination of the Business Committee of such need shall be final and conclusive.

(E)    EDA Property as Public Property.

Personal property and any assignment or lease interest in real property held in the name of the EDA is declared to be public property used for essential public and governmental purposes of the Tribe.

(F)    Lease and Sublease of EDA Interest in Real Property to Third Parties.

The EDA shall have the power to lease and sublease to the Tribe or to third parties the interests in land leased or assigned to the use of the EDA to the extent provided by law, provided that the EDA may not execute a lease of Tribal land leased or assigned to its use for a period exceeding the term of the original lease or assignment of the land to the EDA, absent the consent of the Tribe's Business Committee by duly enacted resolution.

(G)    Conveyance, Assignment or Other Transfer as Evidence of EDA Existence.

Any conveyance, assignment or other transfer of personal property and real property interests by the EDA shall be made in the name of the EDA by the Chairperson, attested by the Secretary/Treasurer. Any such conveyance, assignment or other transfer which bears a signature which purports to be the signature of the Chairperson shall be deemed prima facie evidence that such EDA exists; that the conveyance, assignment or other transfer is the act of the EDA and the Trustees thereof; that it was duly executed and signed by the Chairperson who was a Trustee; and that such instrument conforms in all respects to the requirements of the instrument creating such EDA; and such conveyance, assignment or other transfer shall be admissible in evidence without further proof of execution.

[HISTORY: Ratified by the General Council on June 21, 2008;
Amended by Resolution FSABC-2016-21, October 5, 2016;
Amended by Resolution FSABC-2023-07, April 21, 2023.]

Section 222.  Operating Account; Economic Development Fund and Budget.

(A)    Operating Account.

An EDA Operating Account shall be established and maintained by EDA and shall be administered and operated by the Coordinating Manager, or if no Coordinating Manager

EXHIBIT 1

has been appointed, by the Secretary/Treasurer, for EDA Expenditures from said account which shall be made pursuant to an itemized budget approved by the Board of Trustees, including personnel, contractual and non-personnel expenses.

(B)    Economic Development Fund.

The Economic Development Fund shall be established and maintained by EDA and administered and operated by the EDA. It shall be used for EDA projects approved by the EDA, provided that expenditures shall be made pursuant to a budget specifying source of funding and approved by the Board of Trustees. Proposed expenditures in excess of Fifty Thousand Dollars ($50,000.00) from the fund for any one EDA project shall be subject to the Board of Trustees' approval.

(C)    Budget Approval.

The annual budget shall be approved by the EDA Board of Trustees for all businesses managed by the EDA.

[HISTORY: Ratified by the General Council on June 21, 2008;
Amended by Resolution FSABC-2023-07, April 21, 2023.]

Section 223.  Economic Development Authority Headquarters; Coordinating Manager.

(A)    Location.

The Economic Development Authority shall be headquartered within the Territorial Jurisdiction of the FSAT as designated by majority vote of the Board. The Economic Development Authority may have an office designated as its headquarters within each state where it engages in operations. A record of all correspondence, mail, and other official documents of the EDA, including all computer files and data shall be maintained at the headquarters of the EDA.

(B)    Coordinating Manager; Selection.

(1)    The Coordinating Manager shall be selected and employed by the EDA pursuant to an employment agreement approved by the EDA, which shall include non-competition and confidentiality clauses protecting the Tribe and EDA from the Coordinating Manager's use of confidential or otherwise privileged information to the detriment of the Tribe for a stated period of time following the date his or her employment terminates and pending final contract negotiation with the person selected. In the event that the Coordinating Manager resigns, he or she shall not be eligible for any employment benefits after the effective date of the resignation.

(C)    Coordinating Manager Responsibilities.

The Coordinating Manager shall be responsible for administration of the EDA headquarters, including but not limited to the following authority and functions:

Title 1 – Page 20

EXHIBIT 1

(1)    Day to day management of EDA, including the receipt and compilation of all records, correspondence, mail, other official documents, computer files and data, hiring EDA staff, development of operating policies and procedures, preparation of annual plan of operation for Trustee review (including operating budgets, capital budgets, production and sales targets, staffing requirements, training requirements, expense and revenue projections and reinvestment and profit-sharing plans, accounting for corporate funds and coordination with applicable federal agencies;

(2)    Approve expenditures, provided that all checks must contain signatures of any two of the following: the Managing Director, Chairperson/Vice Chairperson of the EDA Board of Trustees, or the Secretary/Treasurer of the EDA Board of Trustees, and provided further that expenditures shall be consistent with the EDA's annual operating budget and annual budget for the Economic Development Fund;

(3)    Serve in whatever capacity designated by the EDA with regard to each limited liability company established by the EDA pursuant to Section 219 herein;

(4)    Development planning, including seeking and exploring new business opportunities and development of business plans;

(5)    Development of programs to prepare Tribal members to fill managerial and non-managerial positions; and

(6)    Attend and participate in Trustee meetings and report to and advise the EDA; attend and participate in meetings of all standing or temporary committees; and carry into effect all orders and resolutions of the EDA as required or directed or as good business judgment dictates.

(7)    Any other assigned duties as the EDA designates.

(D)    <u>Personnel.</u>

The EDA Office will be staffed with support personnel under the supervision of the Coordinating Manager.

[HISTORY: Ratified by the General Council on June 21, 2008;
Amended by Resolution FSABC-2023-07, April 21, 2023.]

<u>Section 224.  Reports.</u>

The EDA shall submit written quarterly and annual information reports to the Business Committee and General Council of the Tribe showing:

(E)    A summary of the period's activities, including a summary regarding all EDA meetings held during the period, and including the combined income statements of the EDA;

(F)    The financial condition of the EDA, including expenditure reports and profit and loss statements of each EDA LLC, partnership, joint venture or other business entity subject to the

EXHIBIT 1

control of the EDA;

(G)    The condition of the properties under the EDA's management or control;

(H)    A summary of any unprofitable ventures and plans for correction;

(I)    Any significant problems and accomplishments;

(J)    Plans for the future; and

(K)    Such other information as the EDA shall deem pertinent.

[HISTORY: Ratified by the General Council on June 21, 2008;
Amended by Resolution FSABC-2023-07, April 21, 2023.]

Section 225.  Records and Audit.

Sufficient records shall be kept as the EDA prescribes to facilitate an effective audit.  The EDA shall obtain annual audited financial statements for the EDA and any EDA LLC or other enterprise subject to EDA control, provided that said audits shall be conducted in accordance with generally accepted accounting principles.

[HISTORY: Ratified by the General Council on June 21, 2008.]

Section 226.  Insurance.

The EDA shall, to the extent that the Board determines it to be economically reasonable, maintain a policy of directors' and officers' liability insurance, on such terms and conditions as may be approved by the Board.

The EDA may also, to the extent that the Board determines it to be economically reasonable, purchase insurance coverage for Trustee and Officer errors and omissions, fiduciary liability, and other coverages, on such terms as may be approved by the Board

[HISTORY: Ratified by the General Council on June 21, 2008;
Amended by Resolution FSABC-2023-07, April 21, 2023.]

EXHIBIT 1

# CHAPTER THREE
# ISSUANCE OF OBLIGATIONS

Section 301.  EDA to Issue Obligations.

(A)    The EDA may issue Obligations from time to time when expressly authorized by duly enacted resolution of the Board of Trustees for any of its purposes and may also issue refunding Obligations for the purposes of paying or retiring Obligations previously issued by it.

(B)    The EDA may issue such types of Obligations as it may determine, including Obligations on which the principal and interest are payable:

(1)    Exclusively from the income and revenues of the project financed with the proceeds of such Obligations, or with such income and revenues together with a grant from the federal government;

(2)    Exclusively from the income and revenues of certain designated projects whether or not they are financed in whole or in part with the proceeds of such Obligations; or,

(3)    From its revenues generally, any of such Obligations may be additionally secured by a pledge of any revenues of any project or other project or other property of the EDA.

[HISTORY: Ratified by the General Council on June 21, 2008.]

Section 302.  No Personal Liability on Obligations.

The Board of Trustees of the EDA and any person executing the Obligations shall not be personally liable on the Obligations by reason of issuance thereof.

[HISTORY: Ratified by the General Council on June 21, 2008.]

Section 303.  No Tribal Liability on Obligations.

The notes and other Obligations of the EDA shall not be a debt of FSAT, and the Obligations shall so state on their face.

[HISTORY: Ratified by the General Council on June 21, 2008.]

Section 304.  Manner of Issuance and Sales.

Obligations shall be issued and sold in the following manner:

(A)    Obligations of the EDA shall be authorized by a resolution adopted by the vote of a majority of the Trustees and may be issued in one or more series.

(B)    The Obligations shall bear such dates, mature at such times, bear interest at such rates, be in such denomination, be in such form, either coupon or registered, carry such conversion

EXHIBIT 1

or registration privileges, have such rank or priority, be executed in such manner, be payable in such medium of payment, and at such places, and be subject to such terms of redemption, with or without premium, as such resolution may provide.

(C)    The Obligations may be sold at public or private sale at not less than par value.

(D)    In case any of the EDA Trustees whose signatures appear on any Obligations cease to be Trustees before the delivery of such Obligations, the signatures shall, nevertheless, be valid and sufficient for all purposes, the same as if the Trustees had remained in office until delivery.

(E)    Whenever necessary, the EDA shall comply in the issuance of its Obligations with the Securities laws of the federal government.

[HISTORY: Ratified by the General Council on June 21, 2008.]

Section 305.  Obligations Are Negotiable.

Obligations of the EDA shall be fully negotiable.  In any suit, action or proceeding involving the validity or enforceability of any Obligation of the EDA or the security therefore, any such Obligation by the EDA to aid in financing a project pursuant to this law shall be conclusively deemed to have been issued for such purpose in the absence of fraud by the holder thereof in the procurement of the Obligation, and the project for which such Obligation was issued shall be conclusively deemed to have been planned, located and carried out in accordance with the purposes and provisions of this law in the absence of fraud in the procurement of such Obligation or security.

[HISTORY: Ratified by the General Council on June 21, 2008.]

Section 306.  Security for Obligations.

In connection with the issuance of Obligations or incurring of Obligations under leases and to secure the payment of such Obligations, the EDA, subject to the limitations in this law, may:

(A)    Pledge all or any part of its gross or net rents, fees, or revenues to which its right then exists or may thereafter come into existence;

(B)    Provide for the powers and duties of obligees, and limit their liabilities; and provide the terms and conditions on which such obligees may enforce and covenant or their rights securing or relating to the Obligations;

(C)    Covenant against pledging all or any part of its rents, fees and revenues or personal property to which its title or right then exists or may thereafter come into existence or permitting or suffering any lien on such revenues or property;

(D)    Covenant with respect to limitations on its right to sell, lease, or otherwise dispose of any project or any part thereof;

(E)    Covenant as to the Obligations to be issued and as to the issuance of such Obligations in escrow or otherwise, and as to the use and disposition of the proceeds thereof;

EXHIBIT 1

provide for the replacement of lost, destroyed, or mutilated Obligations;

(F)    Covenant against extending the time for the payment of its Obligations or interest thereon;

(G)    Redeem the Obligations and covenant for their redemption and provide the terms and conditions thereof;

(H)    Covenant concerning the rents and fees to be charged in the operation of a project or projects, the amount to be raised each year or other period of time by rents, fees, and other revenues, and as to the use and disposition to be made thereof;

(I)    Create or authorize the creation of special funds for monies held for construction or operating costs, debt service, reserves or other purposes, and covenant as to the use and disposition of the monies held in such funds;

(J)    Prescribe the procedure, if any, by which the terms of any contract with holders of Obligations may be amended or abrogated, the proposition of outstanding Obligations the holders of which must consent thereto, and the manner in which such consent may be given;

(K)    Covenant as to the use, maintenance, and replacement of its real or personal property, the insurance to be carried thereon, and the use and disposition of insurance monies;

(L)    Covenant as to the rights, liabilities, powers, and duties arising upon the breach by it of any covenant condition or Obligation;

(M)    Covenant and prescribe as to the events of default and terms and conditions upon which any or all of its Obligations may become or may be declared due before maturity, and as to the terms and conditions upon which such declaration and its consequences may be waived;

(N)    Vest in any obligees or any proportion of them the right to enforce the payment of the Obligations or any covenants, security or relating to the Obligations;

(O)    Exercise all or any part of or combination of the powers granted in this Section;

(P)    Make covenants other than, and in addition to the covenants expressly authorized in this Section, or of like or different character; and

(Q)    Make any covenants and do any acts and things necessary or convenient or desirable in order to secure its Obligations, or, in the absolute discretion of the EDA, tending to make the Obligations more marketable although the covenants, acts, or things are not enumerated in this Section.

[HISTORY: Ratified by the General Council on June 21, 2008.]

EXHIBIT 1

Section 307.  Actions to Be Filed For Record.

The minutes and record of all actions of the EDA with respect to Obligations issued by it shall be filed for record in the EDA Secretary/Treasurer's Office.

[HISTORY: Ratified by the General Council on June 21, 2008.]

EXHIBIT 1