UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| ECONOMIC DEVELOPMENT AUTHORITY OF THE FORT SILL CHIRICAHUA WARM SPRINGS APACHE TRIBE, | § § § § § | |
| Plaintiff | § § | |
| v. | § § | Case No. CIV-24-661-R |
| THE BUSINESS COMMITTEE OF THE FORT SILL CHIRICAHUA WARM SPRINGS APACHE TRIBE, et al., | § § § § § | |
| Defendants. | § § | |

**PLAINTIFF ECONOMIC DEVELOPMENT AUTHORITY'S BRIEF IN OPPOSITION TO THE FORT SILL APACHE DEFENDANTS' MOTION TO DISMISS**

Ryan S. Wilson, OBA #14340
WILSON LAW FIRM
Post Office Box 891390
Oklahoma City, OK  73189
Telephone: (405) 246-0092
Facsimile:  (405) 246-9652
ryan@RSWilsonlaw.com

# TABLE OF CONTENTS

I.    INTRODUCTION..................................................................................1

II. FACTUAL BACKGROUND..................................................................2

III. ARGUMENT........................................................................................3

   A. Standard of Review.............................................................................3

   B. The Court Has Subject Matter Jurisdiction Over the EDA's Claims........................5
     1. The EDA's ICRA Claim Is Viable..............................................................5
     2. The EDA's IGRA Claim Provides an Independent Basis for Jurisdiction...............8
     3. Federal Common Law Provides a Basis for Jurisdiction.....................................10

   C. The EDA's Claims Are Not Barred by Sovereign Immunity...................................13
     1. The EDA is Not Suing the Tribe.............................................................13
     2. Ex parte Young Doctrine Applies...........................................................14
     3. The Tribe Has Waived Immunity for the EDA..............................................15

   D. The EDA Has Standing to Bring Its Claims.....................................................16
     1. The EDA Has Suffered an Injury in Fact..................................................16
     2. The EDA Has Organizational Standing......................................................17
     3. The EDA Has Third-Party Standing.........................................................19
     4. Tribal Exhaustion Does Not Bar the EDA's Claims......................................22

   E. The Business Committee Defendants' Actions Violate Federal Law.......................23
     1. Violation of IGRA.............................................................................23

   F. The Tribe's Constitution Acknowledges Federal Authority and Jurisdiction...........24

IV. CONCLUSION.....................................................................................26

**TABLE OF AUTHORITIES**

<u>C</u><u>ASES</u>

*Awad v. Ziriax*, 754 F. Supp. 2d 1298 (W.D. Okla. 2010)....................................4

*Breakthrough Mgmt. Grp., Inc. v. Chukchansi Gold Casino & Resort*,
629 F.3d 1173 (10th Cir. 2010).........................................................................15

*Burrell v. Armijo*, 456 F.3d 1159 (10th Cir. 2006).........................................22

*Cabazon Band of Mission Indians v. Wilson*, 37 F.3d 430 (9th Cir. 1994).......................9

*Calvey v. Obama*, 792 F. Supp. 2d 1262 (W.D. Okla. 2011)..............................................4

*City of Albuquerque v. U.S. Dep't of Interior*, 379 F.3d 901 (10th Cir. 2004)..................3

*Crowe & Dunlevy, P.C. v. Stidham*, 640 F.3d 1140 (10th Cir. 2011)..............................14

*Dry Creek Lodge, Inc. v. Arapahoe & Shoshone Tribes*, 623 F.2d 682 (10th Cir. 1980)...7

*Gaines v. Ski Apache*, 8 F.3d 726 (10th Cir. 1993)...........................................................6

*Gaming World Int'l, Ltd. v. White Earth Band of Chippewa Indians*,
317 F.3d 840 (8th Cir. 2003).............................................................................9

*Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114 (10th Cir. 2013)..........................17

*Initiative and Referendum Inst. v. Walker*, 450 F.3d 1082 (10th Cir. 2006)......................4

*Iowa Mutual Ins. Co. v. LaPlante*, 480 U.S. 9 (1987)......................................................12

*Kowalski v. Tesmer*, 543 U.S. 125 (2004)........................................................................19

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)........................................................4

*Moler v. Enbridge Emple. Servs.*, 2022 U.S. Dist. LEXIS 19624 (W.D. Okla. Feb. 3,
2022).....................................................................................................................3

*National Farmers Union Ins. Co. v. Crow Tribe of Indians*, 471 U.S. 845 (1985)............7

*Powers v. Ohio*, 499 U.S. 400 (1991)..............................................................................20

*Pueblo of Santa Ana v. Kelly*, 104 F.3d 1546 (10th Cir. 1997)...........................................8

*Santa Clara Pueblo v. Martinez*, 436 U.S. 49 (1978).........................................................5

*Scheuer v. Rhodes*, 416 U.S. 232 (1974)..........................................................................3

*Singleton v. Wulff*, 428 U.S. 106 (1976)..........................................................................20

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998)...............................................3

*White Mountain Apache Tribe v. Bracker*, 448 U.S. 136 (1980)....................................11

## STATUTES

25 U.S.C. § 2710(B)(2)(A)...............................................................................................23

28 U.S.C. § 1331..............................................................................................................5

INDIAN CIVIL RIGHTS ACT, 25 U.S.C. § 1302 ET SEQ............................................................5

INDIAN GAMING REGULATORY ACT, 25 U.S.C. § 2701 ET SEQ...........................................8

## RULES

FED. R. CIV. P. 12(B)(1)....................................................................................................3

OTHER AUTHORITIES

FORT SILL APACHE TRIBE CONSTITUTION........................................................................24

## I.    <u>INTRODUCTION</u>

Plaintiff in this case challenges the Fort Sill Apache Tribe Business Committee's illegal actions to suspend the Economic Development Authority's (EDA) activities, seize control of its assets, and interfere with its operations in violation of tribal law, the Indian Civil Rights Act (ICRA), the Indian Gaming Regulatory Act (IGRA), and principles of tribal self-governance. On June 28, 2024, the EDA filed a Complaint against the individual members Business Committee of the Fort Sill Apache Tribe (collectively, the "Business Committee Defendants") to prevent the implementation of three unlawful resolutions that exceed the Business Committee's authority and violate the EDA's rights. The Business Committee Defendants filed a Motion to Dismiss [Doc. No. 9] alleging that the Court lacks subject matter jurisdiction, that the EDA's claims are barred by sovereign immunity, and that the EDA lacks standing. As detailed below, these assertions are incorrect and the Business Committee Defendants' Motion to Dismiss should be denied.

The Business Committee Defendants' actions are a clear overreach of their authority under tribal law and violate federal statutes designed to protect tribal economic interests and self-governance. The Business Committee Defendants have not been able to justify the legality of the Business Committee Defendants' actions and continue to ignore the will of the Tribe's General Council by refusing a stay and mediation and continuing to attempt to enforce the illegal resolutions despite the General Council ordering them withdrawn.

## II.    <u>FACTUAL BACKGROUND</u>

The factual background of this case has been described extensively in the *Complaint* [Doc. No. 1] and *Motion for Temporary Restraining Order* [Doc. No. 3]. Plaintiff EDA

briefly summarizes the relevant facts here and incorporates the facts from those documents by reference.

The EDA was established by the Fort Sill Apache Tribe pursuant to tribal law as set forth in the Tribe's Economic Development Code (the "Code"). *See* Ex. 1, Economic Development Code. The Code establishes the EDA as a separate legal entity from the Tribe with the authority to sue and be sued in its own name. *Id.* The Code grants the EDA broad powers to engage in economic development activities for the benefit of the Tribe, including the authority to manage all tribal business entities which includes the Tribe's gaming operations and Gaming Commission. *Id.*

On June 13, 2024, in a secret meeting, the Business Committee passed Resolution FSABC-2024-13 (Ex. 2), which purported to suspend all activities of the EDA Trustees and take control of the bank accounts and assets of the EDA. On June 20, 2024, the Business Committee passed Resolution FSABC-2024-14 (Ex. 3), which purported to suspend all non-gaming activities of the EDA Trustees and take over all non-gaming bank accounts and assets pending investigation of allegations of financial mismanagement. On June 25, 2024, the Business Committee passed Resolution FSABC-2024-15 (Ex. 4), which purported to clarify the Business Committee's authority to suspend and investigate EDA Trustees. (referred to collectively as "the Resolutions.")

These Resolutions exceed the Business Committee's authority under tribal law and violate the due process rights of the EDA and its Trustees. The Resolutions threaten vast irreparable harm to the EDA, and more importantly, the Tribe, by attempting to prevent the EDA from carrying out its economic development mission and managing tribal businesses

2

as authorized by the Code. The Business Committee's actions have placed the Tribe in jeopardy of punishment for IGRA violations and breaching certain covenants and agreements between the EDA and its financial partners.

### III. <u>ARGUMENT</u>

#### A. Standard of Review

Standing is a jurisdictional requirement that "may be challenged by a motion under Rule 12(b)(1)." *Moler v. Enbridge Emple. Servs.*, 2022 U.S. Dist. LEXIS 19624, at 7 (W.D. Okla. Feb. 3, 2022) (*citing Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103-04 (1998)). A motion for lack of subject matter jurisdiction under Rule 12(b)(1) "generally take[s] one of two forms: (1) a facial attack on the sufficiency of the complaint's allegations as to subject matter jurisdiction; or (2) a challenge to the actual facts upon which subject matter jurisdiction is based." *City of Albuquerque v. U.S. Dep't of Interior*, 379 F. 3d 901, 906 (10th Cir. 2004) (citation omitted).

Where a party facially challenges jurisdiction under Rule 12(b)(1), the reviewing court must accept all factual allegations as true and must draw all reasonable inferences in favor of the pleader. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). In addition, when considering when a plaintiff has Article III standing, a federal court "must assume plaintiff's claim has legal validity." *Awad v. Ziriax*, 754 F. Supp. 2d 1298, 1303 (W.D. Okla. 2010) (*citing Initiative and Referendum Inst. v. Walker*, 450 F.3d 1082, 1088 (10th Cir. 2006)). In *Initiative and Referendum Inst. v. Walker*, the Tenth Circuit emphasized that courts must assume the validity of a plaintiff's legal claims when considering standing. This Court

should apply the same presumption here, finding that the EDA has adequately demonstrated standing. *Id.* at 1088.

"The party invoking federal jurisdiction bears the burden of establishing the[] elements [of standing]." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). The EDA meets these criteria by alleging a tangible injury that is directly linked to the Business Committee Defendants' actions and can be redressed by this Court. "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" *Calvey v. Obama*, 792 F. Supp. 2d 1262, 1268-69 (W.D. Okla. 2011) (quoting *Lujan*, 504 U.S. at 561). The EDA's allegations of injury due to the Business Committee's actions thus satisfy the requirements for standing at this juncture.

The Business Committee Defendants have lodged both a facial attack on the sufficiency of the EDA's allegations as to subject matter jurisdiction and a motion to dismiss for failure to state a claim. As such, the EDA is entitled to a presumption that all factual allegations contained within the Complaint are true, and all reasonable inferences must be drawn in favor of the EDA.

### B. The Court Has Subject Matter Jurisdiction Over the EDA's Claims

The Business Committee Defendants claim that this Court lacks subject matter jurisdiction over the EDA's claims. This assertion is incorrect. The Court has federal question jurisdiction under 28 U.S.C. § 1331 because the EDA's claims arise under federal law, including ICRA, IGRA, and federal common law concerning tribal self-governance.

**1.  The EDA's ICRA Claim Is Viable**

While the Supreme Court has held that ICRA does not create a private right of action in federal court for tribal members against tribal officials, *Santa Clara Pueblo v. Martinez*, 436 U.S. 49 (1978), this case is distinguishable. The EDA is a separate entity from the Tribe with the power to sue and be sued under the Tribe's constitution and codes of law, and it alleges violations of federal law that go beyond mere internal tribal matters. *See*, Ex. 1. While *Santa Clara Pueblo v. Martinez* limits federal jurisdiction under the Indian Civil Rights Act, the present case is distinguishable because the EDA, as a stand-apart entity with the power to sue and be sued, and raises claims that extend beyond internal tribal matters, thereby creating a federal question. *See*, Ex. 1.

While the Supreme Court in *Santa Clara Pueblo v. Martinez*, 436 U.S. 49 (1978), held that ICRA does not create a private right of action in federal court for tribal members against tribal officials except for habeas corpus relief, this case presents a unique circumstance that warrants federal court jurisdiction over the EDA's ICRA claim.

The key distinguishing factor is that the Fort Sill Apache Tribe lacks its own tribal court system or administrative process to adjudicate ICRA claims. This absence of a tribal forum creates a jurisdictional vacuum that, if left unfilled, would effectively render the protections of ICRA meaningless for the Tribe's members and entities.

The doctrine of tribal exhaustion, which typically requires litigants to exhaust available tribal remedies before seeking relief in federal court, is inapplicable here. As the Supreme Court noted in *National Farmers Union Ins. Cos. v. Crow Tribe of Indians*, 471 U.S. 845, 856 n.21 (1985), exceptions to the exhaustion requirement exist where "an

5

assertion of tribal jurisdiction is motivated by a desire to harass or is conducted in bad faith, or where the action is patently violative of express jurisdictional prohibitions, or where exhaustion would be futile because of the lack of an adequate opportunity to challenge the court's jurisdiction."

In this case, exhaustion is not merely futile – it is impossible. The Tribe has no court system or administrative process through which the EDA could challenge the Business Committee's actions or seek redress for ICRA violations. This complete absence of a tribal forum distinguishes the present case from *Santa Clara Pueblo* and similar precedents that assume the existence of tribal remedies.

The purpose of ICRA is to protect rights within tribal communities. If federal courts decline jurisdiction in cases where no tribal forum exists, it would create a dangerous loophole allowing tribes to evade ICRA's protections simply by failing to establish their own judicial systems. This outcome would be contrary to Congressional intent in enacting ICRA.

The Tenth Circuit has recognized that federal courts may have jurisdiction over ICRA claims in exceptional circumstances. In *Dry Creek Lodge, Inc. v. Arapahoe & Shoshone Tribes*, 623 F.2d 682 (10th Cir. 1980), the court held that federal jurisdiction was proper for an ICRA claim where there was no tribal forum and the dispute involved the rights of non-Indians. While the present case involves a tribal entity rather than non-Indians, the absence of a tribal forum creates a similarly compelling need for federal court intervention.

6

The EDA's status as a separate legal entity from the Tribe, with the power to sue and be sued, further supports federal court jurisdiction. Unlike individual tribal members, the EDA is a distinct economic entity created by tribal law to manage the Tribe's business affairs. Its claims under ICRA implicate not just individual rights, but the economic interests of the Tribe as a whole.

Given the complete absence of a tribal forum to adjudicate ICRA claims, the important rights at stake, and the EDA's unique status, this Court should find that it has jurisdiction to hear the EDA's ICRA claim. To hold otherwise would leave the EDA and other tribal entities without any recourse for violations of their rights under ICRA, a result that would be inconsistent with the statute's purpose and the principles of justice.

In *Gaines v. Ski Apache*, 8 F.3d 726 (10th Cir. 1993), the court found federal question jurisdiction existed in a case involving a tribal entity's compliance with federal law. The Tenth Circuit expressly recognized that federal question jurisdiction exists in cases where tribal entities are involved and federal laws are implicated. *Id.* This supports the EDA's assertion that its claims under federal law provide a sufficient basis for this Court's jurisdiction. Here, the EDA alleges that the Business Committee Defendants' actions violate ICRA's due process protections as well as IGRA, creating multiple federal questions.

### 2.  The EDA's IGRA Claim Provides an Independent Basis for Jurisdiction

In *Pueblo of Santa Ana v. Kelly*, 104 F.3d 1546 (10th Cir. 1997), the Tenth Circuit addressed federal jurisdiction over claims involving IGRA. The court held that federal courts have jurisdiction over disputes concerning the interpretation and enforcement of

IGRA because it is a federal statute that governs gaming activities on tribal lands. *Id.* at 1557.

The EDA's claims against the Business Committee Defendants argue that their actions violate IGRA by improperly interfering with the Tribe's gaming operations, specifically through the unauthorized seizure of assets and attempts to control gaming-related activities without proper licensure or authority. The *Pueblo of Santa Ana* decision supports the EDA's position that these claims fall under federal jurisdiction because they involve the enforcement of IGRA's provisions, which are exclusively governed by federal law.

In *Pueblo of Santa Ana*, the Tenth Circuit recognized that disputes concerning the regulation and management of tribal gaming under IGRA inherently raise federal questions. *Id.* at 1557. This precedent directly applies to the EDA's situation, where the Business Committee's actions potentially violate IGRA's requirement that tribes retain sole proprietary interest and responsibility over gaming activities. 25 U.S.C. § 2710(b)(2)(A)).

Other cases further bolster the EDA's argument for federal jurisdiction. In *Cabazon Band of Mission Indians v. Wilson*, 124 F.3d 1050 (9th Cir. 1997), the Ninth Circuit held that disputes involving the interpretation of IGRA are within the jurisdiction of federal courts, reinforcing the principle that federal oversight is essential to maintaining the integrity of tribal gaming operations. Similarly, *Gaming World Int'l, Ltd. v. White Earth Band of Chippewa Indians*, 317 F.3d 840 (8th Cir. 2003), recognized that federal courts have jurisdiction over claims involving the misapplication or violation of IGRA by tribal officials.

8

The *Pueblo of Santa Ana v. Kelly* decision, along with supporting cases such as *Cabazon Band of Mission Indians v. Wilson*, 37 F.3d 430 (9th Cir. 1994) and *Gaming World Int'l, Ltd. v. White Earth Band of Chippewa Indians*, 317 F.3d 840 (8th Cir. 2003) strongly supports the EDA's argument that its IGRA claims are within the jurisdiction of this Court. The EDA's claims involve the enforcement of IGRA's provisions, which are inherently federal issues, and therefore, this Court is the proper forum to adjudicate these claims. The Motion to Dismiss should be denied on these grounds, allowing the case to proceed on its merits. The EDA alleges that the Business Committee Defendants' actions, as implemented by Defendants, would violate IGRA by interfering with the Tribe's gaming operations without proper authority or licensure. 25 U.S.C. § 2710(b)(2)(F). This raises a question of federal law and places this matter under the jurisdiction of this Court.

### 3.  Federal Common Law Provides a Basis for Jurisdiction

Federal common law concerning tribal self-governance also provides a basis for federal question jurisdiction. The Supreme Court has recognized that federal common law can create federal question jurisdiction in cases involving the unique status of Indian tribes under federal law. *National Farmers Union Ins. Co. v. Crow Tribe of Indians*, 471 U.S. 845, 850 (1985). The Supreme Court in *National Farmers Union Ins. Co. v. Crow Tribe of Indians* recognized that federal common law creates federal question jurisdiction in cases involving tribal governance. *Id.* This supports the EDA's position that its claims, rooted in federal common law regarding tribal self-governance, fall under the jurisdiction of this Court. The EDA's claims that the Business Committee Defendants' actions violate

principles of tribal self-governance protected by federal common law fall within this category.

Federal common law concerning tribal self-governance is a critical foundation for establishing federal question jurisdiction in cases involving Indian tribes. The Supreme Court has long recognized that Indian tribes occupy a unique status under federal law, granting them inherent sovereignty and the right to self-governance. This status has given rise to a body of federal common law that governs the relationship between tribes, the federal government, and state governments.

In *National Farmers Union Ins. Co. v. Crow Tribe of Indians*, 471 U.S. 845 (1985), the Supreme Court explicitly recognized that disputes involving tribal self-governance could give rise to federal question jurisdiction. The Court stated that issues concerning tribal sovereignty and the relationship between tribes and external entities are inherently federal in nature because they derive from the unique legal status of Indian tribes under federal law. This case involved a tribal court's jurisdiction over a civil action, but the principles articulated by the Court apply more broadly to disputes that implicate tribal governance and federal statutes governing Indian affairs.

Although *Santa Clara Pueblo v. Martinez*, 436 U.S. 49 (1978), limited federal court intervention under the Indian Civil Rights Act (ICRA), it underscored that federal common law still plays a crucial role in determining the extent of tribal sovereignty and the application of federal laws to internal tribal matters. This decision recognized that federal law and tribal law operate in tandem to define the rights and powers of tribal entities, thus creating a federal question when these issues are implicated.

*White Mountain Apache Tribe v. Bracker*, 448 U.S. 136 (1980) established the preemption doctrine in Indian law, holding that state regulation is preempted when it interferes with the federal and tribal interests in self-governance. The Court's analysis emphasized the federal government's role in protecting tribal self-governance, further supporting the notion that such issues fall under federal jurisdiction.

In *Iowa Mutual Ins. Co. v. LaPlante*, 480 U.S. 9 (1987), the Supreme Court reaffirmed that federal courts have a significant role in overseeing issues related to tribal sovereignty and governance, particularly when federal law is implicated. The Court held that tribal court exhaustion was required before federal courts could intervene, but the case nonetheless recognized the importance of federal oversight in matters involving tribal governance. *Id.*

The EDA's claims against the Business Committee Defendants squarely involve issues of tribal self-governance and the interpretation of federal statutes such as the Indian Gaming Regulatory Act (IGRA). These issues are deeply rooted in federal common law, which governs the extent of tribal authority, the application of federal regulations, and the interaction between tribal entities and external governments. As such, these claims inherently raise federal questions that are within the jurisdiction of this Court.

By asserting that the Business Committee's actions violate principles of tribal self-governance protected by federal common law, the EDA is invoking a well-established body of law that supports federal jurisdiction. This argument is bolstered by the precedents set in *National Farmers Union*, *Santa Clara Pueblo*, *Bracker*, and *Iowa Mutual*, all of which recognize the federal nature of disputes involving tribal governance.

11

Federal common law concerning tribal self-governance provides a robust basis for federal question jurisdiction in this case. The EDA's claims, which involve the interpretation and application of federal statutes and principles of tribal sovereignty, fall within the ambit of federal common law, thereby supporting the jurisdiction of this Court to hear the case. The precedents established in *National Farmers Union* and other relevant cases further affirm that this Court is the proper forum for resolving these critical issues.

**C. The EDA's Claims Are Not Barred by Sovereign Immunity**

The Business Committee Defendants argue that the EDA's claims are barred by sovereign immunity. This argument fails for several reasons.

**1.   The EDA is Not Suing the Tribe**

First, the EDA is not suing the Tribe itself, but rather the individual members of the Business Committee for actions that exceed their authority under tribal law. The Supreme Court has recognized that tribal officials are not protected by sovereign immunity when they act beyond the scope of their authority. *Santa Clara Pueblo*, 436 U.S. at 59.

**2.   *Ex parte Young* Doctrine Applies**

In *Crowe & Dunlevy, P.C. v. Stidham*, 640 F.3d 1140 (10th Cir. 2011), the Tenth Circuit addressed the application of the *Ex parte Young* doctrine to tribal officials, holding that tribal sovereign immunity does not bar suits for prospective injunctive relief against tribal officials who are alleged to be acting in violation of federal law. *Id.* at 1154.

In the current litigation, the EDA seeks to prevent the Business Committee Defendants from implementing resolutions that violate the Indian Gaming Regulatory Act (IGRA) and federal due process protections. The *Crowe & Dunlevy* decision supports the

12

EDA's position that even if sovereign immunity might otherwise apply, the *Ex parte Young* doctrine allows the EDA to seek injunctive relief to stop the Business Committee Defendants from continuing to act in ways that are allegedly unlawful under federal law. *Id.*

The Tenth Circuit in *Crowe & Dunlevy* made it clear that the *Ex parte Young* doctrine is applicable where tribal officials are acting beyond the scope of their authority under federal law, allowing for suits that seek to enjoin future actions rather than recover past damages. *Id.* The EDA's claims focus on preventing ongoing and future violations of federal law by the Business Committee Defendants, fitting squarely within the framework established by the *Ex parte Young* doctrine as outlined in *Crowe & Dunlevy*.

This case reinforces that tribal officials cannot hide behind sovereign immunity when they act beyond their lawful authority, especially when federal law is implicated. The EDA's reliance on *Crowe & Dunlevy* supports its argument that sovereign immunity should not shield the Business Committee Defendants from being held accountable for actions that may violate federal statutes like IGRA.

### 3.  The Tribe Has Waived Immunity for the EDA

Third, the Tribe, including the Business Committee, has waived sovereign immunity for the EDA by granting it the power to sue and be sued in its own name. Ex. 1. This waiver extends to suits by the EDA against tribal officials acting beyond their authority.

*In Breakthrough Mgmt. Grp., Inc. v. Chukchansi Gold Casino & Resort*, 629 F.3d 1173, 1183 (10th Cir. 2010), the Tenth Circuit addressed the issue of tribal sovereign immunity and whether it applies to tribal commercial entities engaged in off-reservation

commercial activities. The court held that a tribe's commercial entity, such as the Chukchansi Gold Casino & Resort, is entitled to sovereign immunity if it functions as an "arm of the tribe." *Id.* at 1181. The court applied a five-factor test to determine whether the entity was sufficiently connected to the tribe to be entitled to immunity. *Id.*

The principles set forth in *Breakthrough Mgmt.* can be applied to the EDA's litigation to argue that the EDA, as a separate legal entity created under tribal law, should not be shielded by sovereign immunity when it engages in activities beyond the tribe's core governmental functions. The Tenth Circuit in *Breakthrough Mgmt.* clarified that sovereign immunity is not absolute for tribal entities, particularly when they operate in a commercial capacity or enter into agreements that explicitly waive immunity. *Id.* 1183.

In this case, the EDA is challenging the actions of the Business Committee, which appear to extend beyond its lawful authority, thereby making the doctrine of sovereign immunity inapplicable. The Tenth Circuit's ruling in *Breakthrough Mgmt.* supports the argument that when a tribal entity engages in commercial activities or when its actions fall outside the scope of its traditional sovereign functions, it may be subject to federal jurisdiction, particularly if there is an express or implied waiver of immunity. *Id.* 1183.

Additionally, *Breakthrough Mgmt.* is relevant to the argument that the Tribe's waiver of sovereign immunity for the EDA, as reflected in the Tribe's constitution and the Economic Development Code, allows the EDA to sue and be sued in its own name. The Tenth Circuit in *Breakthrough Mgmt.* emphasized that waivers of sovereign immunity must be explicit, and once given, they cannot be easily retracted. *Id.* at 1182. The EDA can use this case to argue that the Business Committee's actions, which involve commercial and

operational decisions, fall within the scope of activities where sovereign immunity has been waived.

The *Breakthrough Mgmt. Grp., Inc. v. Chukchansi Gold Casino & Resort* decision provides a strong foundation for arguing that the EDA's case against the Business Committee should proceed, despite claims of sovereign immunity. The Tenth Circuit's analysis of tribal sovereign immunity in the context of commercial activities and explicit waivers is directly applicable to the EDA's claims, supporting the argument that the Business Committee Defendants should not be shielded from federal court jurisdiction.

### D. The EDA Has Standing to Bring Its Claims

The Business Committee Defendants argue that the EDA lacks standing to bring its claims. This argument is without merit.

#### 1.     The EDA Has Suffered an Injury in Fact

The EDA has standing to bring this action because it has suffered an injury in fact (loss of control over its operations and assets), which is fairly traceable to the Defendants' actions, and which is likely to be redressed by a favorable decision from this Court. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

#### 2.     The EDA Has Organizational Standing

In *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1126 (10th Cir. 2013), the Tenth Circuit recognized that organizational entities, such as corporations, have standing to assert their own rights when they have suffered a direct injury. The court held that Hobby Lobby, a closely held corporation, had the right to challenge the federal government's contraceptive mandate under the Religious Freedom Restoration Act (RFRA) because the

mandate imposed a substantial burden on the corporation's exercise of religion. *Id.* The case is significant because it confirms that entities can assert their own rights in federal court when those rights are directly impacted by governmental action.

Applying *Hobby Lobby* to the present case, the EDA has standing to assert its own rights because it has suffered a direct injury due to the actions of the individual Defendants. The EDA was established as a separate legal entity under tribal law, with the authority to manage the Tribe's business operations and economic activities. Ex. 1. The Business Committee's resolutions, which seek to suspend the EDA's activities, seize control of its assets, and interfere with its management, directly harm the EDA by obstructing its ability to fulfill its legally defined role and responsibilities.

The EDA's injury is not abstract or speculative; it is concrete and particularized. The Committee's actions threaten the EDA's operational autonomy and financial stability, thereby impairing its capacity to manage the Tribe's economic interests effectively. This direct injury aligns with the type of harm recognized in *Hobby Lobby*, where the Tenth Circuit acknowledged that organizational entities have the right to challenge governmental actions that impede their ability to operate according to their foundational principles and legal obligations.

In *Hobby Lobby*, the court noted that corporations, as legal entities, possess the right to bring claims to protect their interests. Similarly, the EDA was created by the Tribe with the explicit power to "sue and be sued" in its own name, as provided in the Tribe's Economic Development Code. *See*, Ex. 1. This power is crucial for the EDA to carry out

16

its mandate of overseeing tribal business operations and engaging in economic activities for the Tribe's benefit.

The EDA's status as a separate legal entity with the authority to protect its own interests is analogous to Hobby Lobby's position as a corporation seeking to protect its religious rights. In both cases, the entity's ability to bring a lawsuit is essential to its function and mission. The Tenth Circuit's recognition of corporate standing in *Hobby Lobby* thus supports the EDA's standing to challenge the Business Committee's overreach and defend its operational autonomy.

The Tenth Circuit's decision in *Hobby Lobby* also highlights that when an organization's legal rights are infringed upon by governmental actions, the organization has a legitimate basis to seek redress in federal court. The EDA's claims, including violations of the Indian Gaming Regulatory Act (IGRA) and federal due process protections, fall within the purview of federal question jurisdiction. The EDA alleges that the Business Committee's actions, if left unchecked, would violate federal laws governing tribal gaming operations and undermine the Tribe's economic interests.

Furthermore, the EDA's organizational standing is strengthened by its responsibility to manage the Tribe's economic assets and ensure compliance with federal regulations. The potential impact of the Business Committee's actions on the EDA's ability to fulfill these responsibilities justifies the EDA's recourse to federal court, as recognized in Hobby Lobby.

In addition to *Hobby Lobby*, other cases support the notion that legal entities, including those created under tribal law, have standing to protect their interests in federal

17

court. For instance, in *Breakthrough Mgmt. Grp. Inc. v. Chukchansi Gold Casino & Resort*, 629 F.3d 1173 (10th Cir. 2010), the Tenth Circuit held that tribal entities with the power to sue and be sued could bring claims in federal court when their operational autonomy was threatened. *Id.* This precedent further solidifies the EDA's standing in the current litigation.

The principles established in *Hobby Lobby Stores, Inc. v. Sebelius* provide strong support for the EDA's standing to assert its rights in this litigation. The EDA, as a legal entity with the power to sue and be sued, has suffered a direct injury due to the Business Committee's actions, which threaten its ability to manage the Tribe's economic affairs. The Tenth Circuit's recognition of organizational standing in Hobby Lobby is directly applicable here, underscoring the EDA's right to seek redress in federal court. This Court should therefore find that the EDA has valid standing to bring its claims and should allow the case to proceed on the merits.

### 3.    The EDA Has Third-Party Standing

The EDA also has standing to assert the rights of its trustees and the Tribe's economic interests under the doctrine of third-party standing. *Kowalski v. Tesmer*, 543 U.S. 125, 129-30 (2004). In *Kowalski v. Tesmer*, 543 U.S. 125 (2004), the Supreme Court established that third-party standing may be granted when the party asserting the rights has a "close relationship" with the rights-holder, and there is a "hindrance" to the rights-holder's ability to protect their own interests. This doctrine is relevant to the EDA's litigation against the Fort Sill Apache Tribe Business Committee because the EDA is asserting not only its own rights but also the rights of its trustees and the broader economic interests of the Tribe.

The EDA has a close and direct relationship with its trustees, as it is a separate legal entity specifically established by the Tribe's Economic Development Code to manage the Tribe's business activities and to serve the Tribe's economic interests. The trustees are responsible for overseeing the EDA's operations, ensuring compliance with tribal laws, and safeguarding the economic resources of the Tribe. The close relationship between the EDA and its trustees is akin to that of an agent-principal, where the EDA acts on behalf of the trustees and the Tribe's broader economic interests. This relationship satisfies the "close relationship" requirement as articulated in Kowalski.

The second prong of the Kowalski test—whether there is a "hindrance" to the trustees protecting their own rights—also favors the EDA. The Business Committee's actions, including the passage of resolutions that suspend the EDA's activities and seize its assets, create significant barriers to the trustees' ability to protect their interests and the economic interests of the Tribe. These actions not only disrupt the EDA's operations but also directly impede the trustees' capacity to fulfill their fiduciary duties.

Moreover, the trustees may face significant personal and professional risks if they were to bring claims individually, including the potential for retaliation, loss of position, or other adverse consequences within the tribal governance structure. These barriers constitute sufficient hindrance, justifying the EDA's standing to assert the rights of its trustees.

The application of *Kowalski* is further supported by other cases where courts have recognized third-party standing in similar contexts. In *Powers v. Ohio*, 499 U.S. 400 (1991), the Supreme Court allowed a criminal defendant to assert the equal protection

rights of excluded jurors, emphasizing the importance of the relationship between the defendant and the jurors and the significant obstacles that prevented the jurors from asserting their own rights. Similarly, in *Singleton v. Wulff*, 428 U.S. 106 (1976), the Court permitted physicians to assert the rights of their patients in challenging restrictions on abortion funding, recognizing that the close relationship and the practical barriers to patients' asserting their own rights justified third-party standing.

Additionally, the EDA's assertion of third-party standing is consistent with federal common law principles regarding tribal self-governance and the protection of tribal economic interests. The Supreme Court has recognized that federal courts have jurisdiction to hear cases that involve the interpretation of tribal constitutions and the rights protected under federal law, as seen in *Santa Clara Pueblo v. Martinez*, 436 U.S. 49 (1978). While Santa Clara restricted certain federal claims under the Indian Civil Rights Act, it did not foreclose all federal jurisdiction over internal tribal matters, particularly where the federal rights of tribal members or entities are at stake.

The EDA's claims, which include allegations of violations of the Indian Gaming Regulatory Act (IGRA) and federal due process rights, are precisely the type of federal issues that warrant judicial intervention. The doctrine of third-party standing, as articulated in Kowalski, provides a sound legal basis for the EDA to assert the rights of its trustees and the Tribe's economic interests, ensuring that the Business Committee's overreach does not go unchecked.

Under the principles established in *Kowalski v. Tesmer*, the EDA is justified in asserting the rights of its trustees and the Tribe's economic interests in this litigation. The

close relationship between the EDA and its trustees, combined with the significant barriers to the trustees protecting their own rights, supports the application of third-party standing in this case. Moreover, the federal interests at stake and the potential violations of tribal and federal law further bolster the EDA's standing to bring these claims. Therefore, the Court should recognize the EDA's standing and allow the case to proceed on its merits.

### 4. Tribal Exhaustion Does Not Bar the EDA's Claims

While the doctrine of tribal exhaustion generally requires that tribal remedies be exhausted before a case is brought in federal court, *National Farmers Union Ins. Cos. v. Crow Tribe*, 471 U.S. 845 (1985), this doctrine does not apply here because the Tribe lacks a functioning judicial system to address this dispute and there are no other administrative or judicial steps for the EDA to take.

The Tenth Circuit has recognized exceptions to the tribal exhaustion requirement, including where "an assertion of tribal jurisdiction is motivated by a desire to harass or is conducted in bad faith," or where exhaustion would be futile. *Burrell v. Armijo*, 456 F.3d 1159, 1168 (10th Cir. 2006). Given the nature of this dispute and the lack of a tribal forum, requiring exhaustion would effectively deny the EDA any remedy for the alleged violations of federal law.

### E. The Business Committee Defendants' Actions Violate Federal Law

### 1. Violation of IGRA

The Business Committee Defendants' actions, if implemented, would violate IGRA by interfering with the Tribe's gaming operations without proper authority or licensure. IGRA requires tribal gaming commissions to be independent regulatory authorities. 25

U.S.C. § 2710(b)(2)(A). The Tribe's Gaming Commission falls under the supervision and authority of the EDA. The Business Committee's actions in seizing control of the EDA's accounts, attempting to suspend the EDA's chairman without due process and in violation of the Tribe's laws for the removal of a member of the EDA Board of Trustees, and the unlawful seizure of assets over which the General Council have granted control of to the EDA interferes with the EDA's and the Tribal Gaming Commission's ability to operate independently, compromising the integrity of the Tribe's business operations and gaming regulations.

Moreover, IGRA mandates that tribes have the "sole proprietary interest and responsibility for the conduct of any gaming activity." 25 U.S.C. § 2710(b)(2)(A). By attempting to seize control of EDA assets and accounts, the Individual Defendants are effectively asserting proprietary interest over gaming-related assets, violating this IGRA requirement.

### F.  The Tribe's Constitution Acknowledges Federal Authority and Jurisdiction

The Fort Sill Apache Tribe's Constitution, as recently amended on December 19, 2023, explicitly recognizes the authority of the federal government and, by extension, the jurisdiction of federal courts over certain tribal matters. *See,* Ex. 2. This acknowledgment further supports this Court's jurisdiction to hear the present case.

Article XII of the Tribe's Constitution states:

"This Constitution and By-Laws and amendments thereto shall be effective when approved by the Commissioner of Indian Affairs and ratified by a majority vote of eligible adults voting in an election called for that purpose by the Commissioner of Indian Affairs under such rules and regulations as he may prescribe."

*Id.* This provision clearly demonstrates the Tribe's recognition of federal authority in approving and implementing its fundamental governing document. By requiring the Commissioner of Indian Affairs' approval, the Tribe acknowledges the federal government's role in overseeing and sanctioning its governance structure.

Furthermore, Article VIII of the Constitution, which outlines the Tribe's Bill of Rights, explicitly references federal law and rights:

Section 2. This Constitution shall not in any way alter abridge, or otherwise jeopardize the rights and privileges of the tribal members as citizens of the United States or of any state.

\*\*\*

Section 4. The treaty rights or any other Federal Rights of the Fort Sill-Chiricahua-Warm Springs-Apache Tribe shall not in any way be altered, abridged, or otherwise affected by any provision of the Constitution and By-Laws.

\*\*\*

Section 5. The enumeration of any rights in this Article shall not be interpreted to limit the rights otherwise guaranteed by the Indian Civil Rights Act of 1968.

*Id.*. These provisions demonstrate the Tribe's clear intent to operate within the framework of federal law and to preserve federal rights for both the Tribe as a whole and its individual members. By explicitly referencing the Indian Civil Rights Act, the Constitution incorporates federal law into the Tribe's governance structure.

The Tribe's Constitution thus creates a direct link between tribal governance and federal law, acknowledging that certain aspects of tribal affairs are subject to federal oversight and, by extension, federal court jurisdiction. This acknowledgment supports the

proposition that federal courts have jurisdiction to hear cases, such as the present one, that involve alleged violations of federal law and rights by tribal officials.

Considering these constitutional provisions, the Business Committee Defendants cannot credibly argue that this Court lacks jurisdiction to hear claims involving alleged violations of federal law by tribal officials. The Tribe's own foundational document recognizes the applicability of federal law and the potential for federal oversight in tribal affairs. Therefore, this Court should find that it has proper jurisdiction to hear the EDA's claims against the individual Business Committee Defendants.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, the Business Committee Defendants' Motion to Dismiss must be denied. The Court has subject matter jurisdiction over the EDA's claims, which are not barred by sovereign immunity. The EDA has standing to bring its claims, and tribal exhaustion does not apply in this case. The EDA respectfully requests that the Court deny the Motion to Dismiss and allow this case to proceed on the merits.

Respectfully submitted,

_____
Ryan S. Wilson, OBA #14340
WILSON LAW FIRM
Post Office Box 891390
Oklahoma City, OK  73189
Telephone: (405) 246-0092
Facsimile:  (405) 246-9652
ryan@RSWilsonlaw.com

24

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 12, 2024, I electronically transmitted the above and foregoing document to the Clerk of Court using the ECF System for filing. The Clerk of the Court will transmit a Notice of Electronic Filing to all parties who have entered an appearance in this case.

_____
Ryan S. Wilson